IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, ) | CASE NO. 1:12 CV 2107 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| SUROC, INC.; SUROCSHAKER, INC.; ) | |
| SUROCOLUMBUS, LLC; JOHN ) | |
| KOSTOGLOU; GEORGE PAPANDREAS; ) | MEMORANDUM OPINION |
| and THOMAS CULKAR, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF #33), and on the individual Defendants, John Kostoglou, George Papandreas, and Thomas Culkar's Motions for Summary Judgment. (ECF #34, 35, 36). Plaintiff claims that the Defendants failed to pay their sushi chefs minimum wage and/or for overtime as required under the Fair Labor Standards Act. Defendants claim that their #2 and #3 level sushi chefs are exempt under the Fair Labor Standards Act pursuant to the executive exemption, and/or the learned professional exemptions found in 29 U.S.C. §213(a)(1), and more clearly defined in 29 C.F.R. §§ 541.100 and 541.300. Defendants Mr. Kostoglou, Mr. Papandreas, and Mr. Culkar (hereinafter

"the Individual Defendants") also argue that even if the exemptions do not apply, they cannot be personally liable because they are not employers as defined by the Fair Labor Standards Act. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part; and, the Individual Defendants' Motions for Summary Judgment are DENIED.

**Facts**[1]

The Secretary of Labor brought this action alleging that the Defendants repeatedly and willfully violated the Fair Labor Standards Act ("FLSA") by failing to pay minimum wage and overtime to sushi chefs at their Sushi Rock restaurants. The parties all agree that the Sushi Rock restaurants are covered by the Fair Labor Standards Act. Suroc, Inc. operated a Sushi Rock restaurant in Cleveland Ohio; Surocshaker, Inc. operates a Sushi Rock restaurant in Beachwood, Ohio; and, Surocolumbus, LLC operates a Sushi Rock restaurant in Columbus, Ohio. The Individual Defendants are officers and owners of the three corporate Defendants.

The Sushi Rock restaurants all contain a sushi bar that functions mostly independently from the general kitchen. The #1 sushi chef supervises the sushi bar in each restaurant. There are other levels of sushi chef ranked #2 through #5. At any given time, each restaurant may have approximately four to six sushi chefs, including the #1 sushi chef. The parties agree that the position of #1 sushi chef is exempt from the overtime and minimum wage requirements of the FLSA pursuant to the executive exemption. The parties also appear to agree that no exemptions

---

[1]Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

apply to employees in the position of #4 or #5 sushi chef.

The disagreement between the parties stems from the FLSA classification of the #2 and #3 level sushi chefs. Defendants contend that #3 sushi chefs are exempt from FLSA overtime and minimum wage requirements under the Executive Exemption, and that both the #2 and #3 sushi chefs are exempt under the Learned Professional Exemption. The Secretary of Labor argues that no exemptions apply to the #2 and #3 level sushi chefs.

Defendants have submitted two declarations indicating that the #3 sushi chef is "primarily and most directly responsible for managing and directing the work of [the #4 and #5 sushi chefs] as a unit." (ECF #39-2, ¶ 7; #39-3, ¶ 7). Contradicting these declarations is Defendant Kostoglou's deposition testimony that supervision is not the primary duty of the #3 sushi chefs, (ECF #33-5, p. 91), and Defendant Culkar's testimony that the #4 and #5 sushi chefs are supervised by the #3 sushi chef only "at times." (ECF #33-4, p. 90). There is also testimony establishing that the #1 sushi chef supervises the #4 and #5 sushi chefs, as well as setting their work hours, and establishing and enforcing work rules. (ECF #33-4, p. 93, 96-97).

The parties agree that the #3 sushi chef has no authority to hire and fire other employees. The Defendants have submitted declarations from two #1 sushi chefs, who are responsible for hiring and firing, saying that the #3 sushi chefs can make recommendations related to the hiring and firing of the #4 and #5 sushi chefs and that the #1 sushi chefs "would give serious consideration and weight to any recommendations that the number 3 chef would make," in this regard. (ECF #39-2, ¶8; ECF #39-2, ¶ 8). However, there is no evidence that any such recommendations have ever actually been solicited or offered (and, therefore, ever been considered) relative to the hiring and firing of #4 and #5 sushi chefs at any of these

-3-

establishments.

Number 2 and number 3 sushi chefs at these establishments do not have culinary degrees, and a college or culinary degree is not a job requirement.  The minimum experience, education, and other prerequisites required for these positions are a minimum of five to ten years experience (depending on the hiring level), "gained by employment as a sushi chef under experienced sushi chefs at established sushi restaurants. . ."  (ECF #33-3, p. 14-15).  Defendants claim that once hired, their sushi chefs "are continually being instructed and taught in a classroom fashion, using the restaurant as a school, when their actual job duties are not being performed."  (ECF #39, p. 13).  They have not presented any evidence of how many hours of instruction are provided, how the instruction is given, whether there are texts or tests or other indicia of academic training involved in the instruction, whether the instruction is the same or similar for every employee, or who specifically provides the instruction.

Each of the Individual Defendants owns between 25% and 38% of each corporate entity; together they own one hundred percent of Suroc, Inc. and Surocshaker, Inc., and eighty percent of Surocolumbus, LLC.     The degree to which the Individual Defendants were involved in the employment decisions relating to the sushi chefs is disputed by the parties.

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

-5-

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

If a party fails to object before the district court to the affidavits or evidentiary

> materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

I.  Exemptions to the Fair Standards Labor Act

The Fair Labor Standards Act requires employers to pay their employees a minimum hourly wage, and to pay additional wages for all work in excess of forty hours a week. 29 U.S.C. §§ 206, 207. However, there are certain classifications of employees who are exempt from the FLSA minimum wage and overtime pay protections. Exemptions under the FLSA are affirmative defenses, therefore, the Defendants bear the burden of proving that a specific

exemption applies. *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847 (6th Cir. 2012). Exemptions under the FLSA are also narrowly construed against the employer who seeks to assert them. *Id.* In this case, the Defendants argue that the #2 and #3 sushi chefs are exempt from the minimum wage and overtime requirements of the FLSA under the "learned professional" exemption, and that the #3 sushi chefs are also exempt under the "executive" exemption.

### A. Learned Professional Exemption

The FLSA provides an exemption to the minimum wage and overtime requirement for "any employee employed in a bona fide . . .professional capacity." 29 U.S.C. § 213(a)(1). This exemption is commonly known as the "learned professional exemption." See 29 C.F.R. § 541.301; see also, *Solis v. Washington*, 656 F.3d 1079, 1081 (9th Cir. 2011). According to the Department of Labor's regulations:

> (a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
>
>> (1) The employee must perform work requiring advanced knowledge;
>>
>> (2) The advanced knowledge must be in a field of science or learning; and
>>
>> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301.

The regulations further state that "advanced knowledge" must be "customarily acquired by a prolonged course of specialized intellectual instruction," and that the "best prima facie evidence" of the this requirement is an academic degree. 29 C.F.R. § 541.301(d). It is

undisputed that the employees for whom this exemption is being claimed are not required to have an academic degree of any kind. Therefore, the exemption cannot be established through the "best prima facie evidence."

Defendants have argued although no degree is required to be a #2 or #3 sushi chef, they should be exempt because:

(1) they are chefs who prepare food in a restaurant for service and therefore are exempt under the Department of Labor's own regulations;

(2) they have gained "prolonged academic instruction provided by master sushi chefs." (ECF #39, p. 12). Neither of these arguments meets the evidentiary or legal criteria required for the "learned professional" exception.

### 1. Exempt Chefs under the Department of Labor Regulations

There is no regulation promulgated by the Department of Labor that exempts the entire profession of "chef" from the overtime and minimum wage standards. The Department of Labor has recognized that "[c]hefs, such as executive chefs and sous chefs, who have attained a four-year specialized academic degree in a culinary arts program, generally meet the duties requirements for the learned professionals exemption." The exemption "is not available to cooks who perform predominantly routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(e)(6). This regulation does not allow application of the learned professional exemption even to all chefs or sous chefs who actually do hold a four-year culinary degree. The regulation notes that a degree will "generally" result in an exemption for certain chefs, but it also makes clear that this may not be the case of the duties performed by such chefs do not rise to the level defined under the learned professionals exemption.

The parties in this case agree that the #2 and #3 sushi chefs are not required to have an academic degree.  Thus, Defendants cannot establish that the learned professional exemption applies under this provision that allows the exemption for chefs with a four-year culinary arts degree.  There is nothing within the language of this specific "chef's" regulation that would allow work experience and/or in-house training, post-hire, to substitute for a four-year culinary degree.   Therefore, Defendants have not met their burden of establishing that the #2 and #3 sushi chefs are exempt pursuant to the "chef's" regulation under 29 C.F.R. § 541.301(e)(6).

2. Allowance of the Exemption in the Absence of an Academic Degree

Defendants also argue that the #2 and #3 sushi chefs should qualify for the learned professional exemption because the position requires five to ten years of experience, and these chefs learn their skill through work experience and "regular intellectual instruction" post-hiring, at the job site.  Such an application would impermissibly expand the scope of the learned professional exemption.  Both the Department of Labor, and the federal courts have denied application of this exemption to employees (including chefs) who have obtained their skill predominantly through work experience and post-hire training programs.  This has held true even when the training programs involved a significant amount of "class-room type" instruction, including .

The Department of Labor rejected a plea from the National Restaurant Association, seeking a change to the regulations which would allow work experience to substitute for a four-year college degree in culinary arts, reasoning that such a change would impermissible expand the scope of the learned professional exemption.  69 Fed. Reg. 22, 122, 22,154 (Final Rule. April 23, 2004).    The sushi chefs at issue in this case primarily learn their craft on the job from

master sushi chefs, in an apprentice type arrangement.  The job postings defining the requirements of the job refer only to the number of years worked in similar positions and make no reference whatsoever to any necessary degree or other academic or intellectual based training.  The Defendants do not claim that these positions customarily require applicants to hold a four-year degree in the culinary arts or otherwise.

The Second Circuit has made clear that extensive specialized knowledge is not sufficient to satisfy the criteria for this exception.  In *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 206 (2d Cir. 2009), the employees at issue were required to "possess 'technical knowledge with 12 or more years[] related experience' in the field." This was insufficient.  The Court noted that "where most or all employees in a particular job lack advanced education and instruction the exemption is inapplicable...if a job does not require knowledge customarily acquired by an advanced educational degree. . . regardless of the duties performed, the employee is not an exempt professional." *Id.*   The sushi chef positions at issue in this case require similar specialized ("technical") knowledge in their field and even fewer years of related experience than did the employees in *Young*.  Further, it is undisputed that regardless of how skilled or specialized a sushi chef's duties may be, the job does not require knowledge customarily acquired by an advance educational degree.

Defendants attempt to distinguish themselves from the employer in *Young* by claiming that their employees learn not only through on-the-job experience, but also through "intellectual instruction" provided "in a classroom fashion, using the restaurant as a school" whenever the employees are not performing their actual job duties.  They fail, however, to provide any evidence whatsoever as to what the supposed "intellectual instruction" includes, what

-11-

information is taught, how the information is conveyed, whether studying is required, how many hours are devoted to it, whether there is testing or certification involved,[2] where the instruction is provided (other than "at the restaurant"), whether there is a set schedule or time set aside for instruction, or even whether it is actually mandatory.  Without such evidence there is no way for this Court or for a jury to determine whether the instruction was academic or intellectual in nature, or whether it could qualify as "prolonged" as required under the exemption.  Merely labeling on-site training "intellectual instruction" is insufficient to prove that it could constitute the equivalent of an advanced academic degree.

Further, even if these establishments did provide on-going, post hire, intellectual or academic training, as they have alleged, there is absolutely no evidence that the employees were required to have "advanced knowledge" of this information before being hired.  The requirement for the learned professional exemption is not that the employees are trainable, or able to learn a skill through on-going work and study, but rather that the work they are hired to do requires "advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."   A job that requires an employee to have several years of work experience, with no requirement for any academic degree, certification, or prior academic training, does not meet this specific "advance knowledge" requirement.  This remains true even if the employer provides additional post-hire training, be it hands-on or "intellectual" in nature.  The Defendants have failed to meet their burden of presenting evidence sufficient to

---

[2] The court in *Pignataro v. Port of N.Y. and N.J.*, 593 F.3d 265, 273 (3rd Cir. 2010) found that helicopter pilots who acquired most of their skills through on the job training were not exempt even though they were "highly trained technicians" with significant training that involved practical and written testing.  In this case, there is no evidence to even suggest that the sushi chefs were subject to any testing.

support a finding that the #2 and #3 sushi chefs fit within the "learned professional" exemption. Therefore, summary judgment is warranted in favor of the Plaintiff on the issue of whether this exemption applies to the #2 and #3 sushi chefs.

### B. Executive Exemption

Another exemption to the FLSA's minimum wage and overtime requirements applies to "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). An employee who is working in a "bona fide executive capacity" is defined in the regulations promulgated by the Department of Labor as any employee

(1) who is compensated on a salary basis at a rate of not less than $455 per week;

(2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) who customarily and regularly directs the work of two or more other employees; and;

(4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. In order to apply the exemption, an employer must be able to prove that the employee satisfies each of the four elements. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505, n. 6 (6th Cir. 2007).

In this case, the parties do not dispute that the employees in question were paid more than $455 a week. There is some conflicting evidence that could arguably support either side's argument regarding the extent of the management duties associated with the position. However, the Defendants have presented no evidence that could support a finding that the fourth requirement for application of the executive exemption was fulfilled. The parties agree that the

-13-

#3 sushi chefs did not have the authority to hire or fire other employees.  Rather, the #1 sushi chefs were tasked with this duty.

Defendants argue that the Declarations from two of their #1 sushi chefs, stating that #3 sushi chefs "can" make suggestions and recommendations related to the hiring and firing of other employees, and that any such recommendation "would" be given considerable weight, is sufficient to establish this fourth element.   However, these statements do not match the language of the exemption, which we are bound to interpret narrowly. *See Orton*, 668 F.3d at 847.  The exemption language creates an active and affirmative requirement that the people in charge of hiring/firing give particular weight to suggestions and recommendations that are made by the exempt employee.  It is not sufficient that a supervisor believes he or she  "would" consider an unsolicited suggestion, if an employee happened to decide, on their own accord, to make their personal opinion known.

Defendants have, at best, presented a colorable argument, backed with a mere scintilla of evidence.  This is clearly insufficient under the summary judgment standard.  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  The evidence presented offers no insight into what, in fact, occurred during the tenure of the employees in question.  It merely recites the legal standard and contends that it would be met, if the situation were ever presented.[3]  There is absolutely no evidence that the #3 sushi chefs in any of these establishments ever made a suggestion or recommendation as to the hiring, firing,  advancement,

---

[3]

  It also bears noting that during discovery, in response to interrogatories, Defendants were
unable to identify any "instance in which the [#3 sushi chefs] hired or fired other
employees" or any "instance in which the employee made suggestions or recommendations
as to the hiring, firing, advancement, promotion or any other change of status of other
employees."  (ECF #33, Ex. B).

promotion or any other change of status of other employees. There is absolutely no evidence that any such suggestions or recommendations were ever solicited or expected from the #3 sushi chefs. Therefore, there it follows that there is no evidence that any such suggestions or recommendations were ever given particular weight in the actual hiring and firing process. The criteria for this exemption simply was not met. Therefore, summary judgment is warranted in favor of the Plaintiff on the issue of whether the executive exemption applies to the #3 sushi chefs.

### C. Liability of the Individual Defendants

Under section 3(d) of the FLSA, an "employer" is individually liable for minimum wage and overtime violations. 29 U.S.C. §203(d); *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 965 (6th Cir. 1991). The individual defendants in this case, Mr. Culkar, Mr. Kostoglou, and Mr. Papandreas all claim that they are not employers as defined by the FLSA. Plaintiffs contend that all three individual defendants do fit the definition of employer under the FLSA. A person is an employer under the FLSA is he has "operational control of significant aspects of the corporation's day to day functions*." Elliott Travel*, 942 F.2d at 966. Both parties have presented evidence in support of their positions. The Court finds that there is, in fact, a genuine issue of material fact as to whether the Individual Defendants exercised sufficient control over the operational functions of the businesses to qualify as "employers" under the Act. Summary Judgment on this issue, therefore, is denied.

**Conclusion**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment (ECF #33) is GRANTED in part and DENIED in part. The "executive exemption" and "learned professional

-15-

exemptions" do not preclude application of the FLSA minimum wage and overtime requirements to the #2 and #3 sushi chef positions. There remains a question of fact as to the liability of the Individual Defendants, however. For this reason, the Individual Defendants' Motions for Summary Judgment (ECF # 34, #35, and # 36) are also DENIED. Trial remains set for September 29, 2014 at 8:30 a.m.. IT IS SO ORDERED.

                                                  /s/ Donald C. Nugent
                                                  DONALD C. NUGENT
                                                  United States District Judge

DATED: September 11, 2014